IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL TRUST INSURANCE CO.,           ) | |
|     Plaintiff,                                                  ) | |
| )| |
| v.                                                                       ) | CIVIL ACTION NO. 10-00710-KD-C |
| )| |
| MAGNOLIA ENTERPRISES, INC., *et al.*,   ) | |
|     Defendants.                                            ) | |

**ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 49). Upon consideration of the parties' briefs and evidentiary submissions (Docs. 50, 50-1, 52, 53-1 to 53-11, 54, 55-1 to 55-3, and 56),[1] Plaintiff's motion is due to be **DENIED**.

**I.      Nature of the Case**

Plaintiff National Trust Insurance Company ("National Trust"), an Indiana corporation, has brought this declaratory judgment action to determine whether it owes insurance coverage to its former policyholder, Defendant John G. Walton Construction Company, Inc. ("Walton Construction"), an Alabama corporation, for allegedly tortious conduct that occurred while Walton Construction and Defendant Volkert Construction Services, Inc. ("Volkert"), another Alabama corporation, were engaged by the City of Mobile ("the City," an Alabama municipality and another Defendant in this action) to repair the water and sewage systems underneath Florida Street in Mobile, Alabama. Defendants Magnolia Enterprises, Inc., Julie Wheat, Ralph Wheat, Mobile's Whistle Stop, Inc., Harold S. Metzger, Jr., Knot Just Beads, Inc., Bob Schwartz, Eileen Schwartz, Autry Greer & Sons, Inc., Monahan Investments, Inc., McDuff & Allyn Studios, Inc., Midtown Dance Studio, Inc., Marianna Hanceri, Pharmacy Services Diversified, Inc., Jodi

---

[1] Only two Defendants, John G. Walton Construction Company, Inc. and the City of Mobile, have responded to Plaintiff's motion.

1

Silvio, Bill T. Kaller, Joseph Michael O'Bryan, Midtown Antiques & Consignments, and Diane Caylor (collectively, the "State Court Plaintiffs") are Alabama residents and corporations that have sued Walton Construction, Volkert, and the City in the Circuit Court of Mobile County, Alabama in an effort to recover damages for injuries they allegedly sustained during the Florida Street repair (the "Underlying Action").[2]  To date, National Trust has provided Walton Construction with a defense in the Underlying Action subject to a reservation of rights, but it now seeks a declaration that the relevant general liability insurance policy does not cover the State Court Plaintiffs' allegations and imposes no duty upon National Trust to defend or indemnify Walton Construction.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56(c) governs procedures and provides as follows:

> **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

[2]  The Underlying Action is captioned Gardberg Furniture, Inc., et al. v. City of Mobile, et al. and has been assigned Case No. CV-2008-000266.

For reasons not immediately apparent, not all of the parties to the Underlying Action are parties to this declaratory judgment suit.  At least five entities that sued Walton Construction, Volkert, and the City in state court were not named in National Trust's complaint as parties to this action, and, therefore, those entities are not included within the definition of "State Court Plaintiffs" as that term is used throughout this Order.  Nonetheless, four of those entities — specifically, Gardberg's Furniture, Inc. ("Gardberg's"), DJG, LLC ("DJG"), Spherion, Inc. ("Spherion"), and A&R, Inc. ("A&R") — have been incorrectly identified as defendants on the Court's docket.  Accordingly, the Clerk of Court is **DIRECTED** to strike Gardberg's, DJG, Spherion, and A&R from the docket.

Additionally, National Trust has represented in its summary judgment papers that most of the State Court Plaintiffs have either settled or dismissed their claims against Walton Construction, Volkert, and the City.  (Doc. 56 at 2 n.1).  National Trust has agreed that, in the event that summary judgment is not granted in its favor, it will voluntarily dismiss from this action those State Court Plaintiffs who have settled or dismissed their state claims.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) *Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) *Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) *Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

National Trust, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).

If National Trust satisfies its initial burden under Rule 56(c), the non-movants must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See

Clark, 929 F.2d at 608.  In reviewing whether the non-moving parties have met their burden, the Court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movants is to be believed, and all justifiable inferences are to be drawn in their favor.  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).

### III.     Factual Background

National Trust is an insurance company that, on or about December 31, 2006, issued a commercial general liability ("CGL") policy, Policy No. CPP0003195 (the "Policy"), to Walton Construction.  (Doc. 1-1 at 1).[3]  The Policy was delivered to Walton Construction in Mobile, Alabama.  (Doc. 1 at 6, ¶ 27; Doc. 27 at 2, ¶¶ 24-27).  Subject to certain conditions, limitations, and exclusions, the Policy required National Trust to pay up to $1,000,000 that Walton Construction may become legally obligated to pay as damages for "bodily injury" and "property damage," as defined by the Policy.  (Doc. 1-1 at 4).  The Policy also required National Trust to defend Walton Construction in any civil proceeding seeking such damages.  (Id. at 4 & 18).[4]

Between July 2007 and May 2008, Walton Construction engaged in "Phase I" of a construction project on Florida Street in Mobile, Alabama.  (Doc. 53-4 at 2).  As described by Walton Construction's Job Superintendent, Fred Hall ("Hall"), who was present at the Florida

---

[3]  The Policy's declaration page indicates that it was prepared on January 2, 2007, though the policy period began on December 31, 2006.  (Doc. 1-1 at 1).  Apparently, Walton Construction renewed a previously issued policy that was also assigned Policy No. CPP0003195.  (Id.).  Neither party has offered any evidence as to when that renewal occurred.

[4]  The Alabama Supreme Court recently quoted at length from a decision of another state court of last resort that provided "helpful background on the origination and object" of CGL policies, most of which "are written on standardized forms developed by an association of domestic property insurers" and which, like the Policy at issue in this case, "begin with a broad grant of coverage, which is then limited in scope by exclusions."  See Town & Country Prop., L.L.C. v. Amerisure Ins. Co., Nos. 1100009 & 1100072, 2011 WL 5009777, at *2-3 (Ala. Oct. 21, 2011) (quoting Sheehan Constr. Co. v. Cont'l Cas. Co., 935 N.E.2d 160, 162-63 (Ind. 2010)).

Street job site on a daily basis, the construction project involved "digging up Florida Street," removing the existing drainage system, and installing a new cast-in-place concrete box culvert. (Id. at 2-3). While the project was ongoing, Florida Street was "an open excavation pit," and traffic was directed away from the street, at least part of which was "100% closed" for safety reasons. (Id. at 3-4). As the project progressed northward, Walton Construction stored excavated dirt on site to be used as backfill. (Id. at 3). Though Walton Construction intended to keep the dirt on the City's right of way, Hall concedes that there were occasions when dirt and debris may have been placed on private property or fell from trucks that pulled into, turned around in, and/or parked in private parking lots. (Id.). Hall also concedes that dirt placed on the City's right of way may have been dispersed by wind and water. (Id.).

On February 1, 2008, in the Circuit Court of Mobile County, Alabama, several corporations that operated businesses on Florida Street filed a lawsuit and sought a preliminary injunction against the City, Volkert, and eight fictitious defendants who were alleged to have trespassed and created nuisances upon the corporations' properties during the course of the construction project. (Doc. 53-3). On September 24, 2008, the corporations amended their complaint and joined other Florida Street businesses and property owners as additional plaintiffs and Walton Construction as a third defendant. (Doc. 53-1 at 5). A Second Amended Complaint was filed on May 6, 2009 and is presently the operative pleading in the Underlying Action. (Doc. 53-2). The Second Amended Complaint alleges that, during the Florida Street construction project, Walton Construction, Volkert, and the City blocked pedestrian and vehicular traffic on Florida Street and placed large deposits of dust, dirt, construction waste, decayed pipe, and construction equipment on private property belonging to the State Court Plaintiffs and others. (Doc. 53-2 at 7-9, ¶¶ 31, 36 & 37). Though the Second Amended

5

Complaint asserts causes of action for trespass, nuisance, and inverse condemnation, only the trespass and nuisance claims remain active in the Underlying Action.  (Doc. 55-3).

National Trust moved to intervene in the Underlying Action on October 22, 2010.  (Doc. 53-1 at 17).  Two months later, on December 21, 2010, National Trust filed a complaint in this Court seeking a declaration that it has no duty to defend, indemnify, or expend any sums on behalf of Walton Construction because 1) none of the damages alleged in the Underlying Action were caused by an "occurrence," as that term is defined by the Policy; 2) the plaintiffs in the Underlying Action neither alleged nor suffered "property damage," as that term is defined by the Policy; 3) none of the damages sought by the plaintiffs in the Underlying Action occurred while the Policy was in effect; and/or 4) coverage is eliminated by several exclusions[5] under the Policy.  (Doc. 53-2).

After seeking and obtaining an extension of time to file dispositive motions (Docs. 40 & 41), National Trust moved for summary judgment on November 29, 2011.  (Doc. 51).  Walton Construction and the City responded to National Trust's motion on December 22, 2011 (Docs. 52 & 54), but Volkert and the State Court Plaintiffs, all of whom are defendants in this action, did not.  After National Trust filed a reply brief on December 29, 2011 (Doc. 56), the Court took the motion under submission.

---

[5]  Specifically, National Trust's complaint alleged that coverage is eliminated by the Policy's exclusions for expected or intended injury (Doc. 53-2 at 13-14, ¶¶ 50-53), contractual liability (id. at 14, ¶¶ 54-67), and business risk (id. at 14-16, ¶¶ 58-60).  However, National Trust's summary judgment briefs made no mention of the contractual liability and business risk exclusions that respectively provide the basis of Counts V and VI of the complaint. Accordingly, the Court will construe National Trust's summary judgment motion as a motion for partial summary judgment and will refrain from determining the merits of National Trust's contention that coverage is excluded by the Policy's contractual liability and business risk exclusions.

**IV.   Analysis**

      A.      Duties To Defend and Indemnify

National Trust contends that "it does not have a duty to defend or indemnify [Walton Construction] in the underlying action." (Doc. 50 at 3). At present, any determination as to National Trust's indemnity obligations would be premature, given that litigation in the Underlying Action is ongoing. As Chief Judge Steele observed last week, "[c]ase law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action." Pa. Nat'l Mut. Cas. Ins. Co. v. King, No. 11-0577-WS-C, 2012 WL 280656, at *5 (S.D. Ala. Jan. 30, 2012) (citing, *inter alia*, Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp., 445 F.2d 1278, 1281 (5th Cir. 1971)[6] ("[N]o action for declaratory relief will lie to establish an insurer's liability . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize.")); see also Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc., 387 F. Supp. 2d 1205, 1211-12 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability."). Accordingly, this Order will address only whether the Policy extends coverage to Walton Construction and whether National Trust therefore has a duty to defend Walton Construction in the Underlying Action.

      B.      Governing Law

In determining the scope of coverage under the Policy and National Trust's duty to

---

[6]   All cases decided by the former Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

defend Walton Construction in the Underlying Action, this Court will apply Alabama law. "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Adhering to the principle of *lex loci contractus*, Alabama courts hold that contract claims are governed by the laws of the state in which the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement. Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991). It is axiomatic that insurance policies are "essentially like all other contracts," Hartford Fire Ins. Co. v. Shapiro, 117 So. 2d 348, 352 (Ala. 1960), and are therefore subject to the *lex loci contractus* doctrine. See Cincinnati Ins. Co. v. Girod, 570 So. 2d 595, 597 (Ala. 1990) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama . . . ."). Because the policy at issue here was delivered to Walton Construction in Alabama and makes no reference to the laws of some other jurisdiction, Alabama law must govern.

Under Alabama law, the question of whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. See Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058, 1063 (Ala. 2003); see also Ajdarodini v. State Auto Mut. Ins. Co., 628 So. 2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured."). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend

8

regardless of the ultimate liability of the insured." Gunnin v. State Farm and Cas. Co., 508 F. Supp. 2d 998, 1002 (M.D. Ala. 2007) (citation omitted). However, in deciding whether the complaint alleges a covered accident or occurrence, "the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence in a suit for declaratory relief." Pac. Indem. Co. v. Run-A-Ford Co., 161 So. 2d 789, 795 (Ala. 1964).

The Alabama Supreme Court summarized the standard that a court will employ to determine the existence or nonexistence of an insurer's duty to defend:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence.

Tanner, 874 So. 2d at 1065 (internal citations omitted). With these principles in mind, the Court will address whether the facts alleged in the Second Amended Complaint filed in the Underlying Action state an "occurrence" of "property damage" within the Policy's coverage period to which the Policy extends coverage notwithstanding its exclusion for expected or intended injuries.

C. Scope of Coverage

The Policy provides that National Trust will "pay those sums that [Walton Construction] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applies." (Doc. 1-1 at 4). The policy applies to "bodily injury" and "property damage" only in particular circumstances as set forth by the policy:

9

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place within the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period; and
      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II [of the Policy] and no "employee" authorized by [Walton Construction] to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

(Id.).

The Policy defines "occurrence," "bodily injury," "property damage," and "coverage territory." As used throughout the Policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 17). "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Id. at 15). "Property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property" as well as "[l]oss of use of tangible property that is not physically injured." (Id. at 17-18). "Coverage territory" is defined in three subparagraphs — one of which has three subparts of its own — but the full definition does not bear repeating here as it unquestionably includes Mobile, Alabama. (Id. at 15).

National Trust contends that the Second Amended Complaint filed in the Underlying Action alleges "only purposeful and intentional acts" and, therefore, that Walton Construction's alleged conduct cannot possibly constitute an "occurrence." (Doc. 50-2 at 6-8). The Court finds fault with the premise of National Trust's argument. As the Alabama Supreme Court has held repeatedly, purposeful and intentional acts can provide the basis for an "occurrence" where those acts have unintended consequences. See, e.g., U.S. Fid. & Guar. Co. v. Armstrong, 479 So. 2d 1164, 1166-67 (Ala. 1985) (discharge of raw sewage resulting from contractor's intentional crushing of sewer line during construction project was an "occurrence" within meaning of CGL policy where contractor did not specifically intend for sewage to back up in the line and flow

10

onto adjacent private property); Moss v. Champion Ins. Co., 442 So. 2d 26 (Ala. 1983) (unintended water damage resulting from contractor's purposeful removal of roof was an "occurrence" within the terms of CGL policy).  Put differently, an accident can occur even though the initiating force was deliberate rather than the result of a loss of control.  In any event, National Trust has failed to cite any legal authority that would compel the Court at this stage in the proceedings and on the record before it to find that the alleged dispersion of material on the State Court Plaintiffs' land could not have been accidental, even presuming volitional acts by Walton Construction.

  National Trust and Walton Construction both urge the Court to consider that an insurer's duty to defend is determined by the factual allegations asserted against the insured, not by the "legal phraseology" employed in the underlying complaint. See Doc. 50 at 7 (citing Am. Safety Indem. Co. v. T.H. Taylor, Inc., No. 2:10cv48–MHT, 2011 WL 1188433, at *4-5 (M.D. Ala. Mar. 29, 2011); Doc. 52 at 5 (citing Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank, 928 So. 2d 1006, 1011-13 (Ala. 2005)).  In accordance with the holdings of those cases, it matters not that the State Court Plaintiffs chose to label the first count of the Second Amended Complaint "Trespass" and the second count "Nuisance."  The Second Amended Complaint must be "liberally construed in favor of the insured," Ladner & Co. v. S. Guar. Ins. Co., 347 So. 2d 100, 103 (Ala. 1977), and, in such light, the Court cannot find that the facts alleged therein fail to state an "occurrence."  However, even if the bare allegations of the Second Amended Complaint were insufficient, the Court could find that National Trust has a duty to defend based on the sworn affidavit of Hall, Walton Construction's on-site job superintendent, who avers that "[i]f any dirt was placed outside of the [City's] right of way [i.e., on private property], it was not [Walton Construction's] intention to place it there or to cause any harm or damage to the adjoining

11

property owners or businesses." (Doc. 53-4 at 3). See Hartford Cas., 928 So. 2d at 1011 ("presupposing a negative answer to the first inquiry [of whether the facts alleged in complaint state an 'occurrence'], we must determine whether the 'facts which may be proved by admissible evidence' state an 'occurrence'").

Accordingly, National Trust is not entitled to summary judgment on the question of whether the Second Amended Complaint has alleged an "occurrence."

National Trust also has failed to establish the absence of a material dispute as to whether the bodily injury and property damage alleged in the Second Amended Complaint occurred between December 31, 2006 and December 31, 2007, while the Policy was in effect.[7] Though the Second Amended Complaint is ambiguous as to when the alleged bodily injury and property damage occurred,[8] Walton Construction has come forward with admissible evidence and made a sufficient showing that at least some of the State Court Plaintiffs' alleged injuries occurred within the policy period. For example, Bill T. Kaller ("Kaller"), one of the State Court Plaintiffs, testified at his deposition that trucks that belonged to either the City, Walton Construction or another construction firm parked in his parking lot, damaged the lot, damaged his fence, and damaged his sod sometime in 2007. (Doc. 53-7 at 6-8).

National Trust's argument on reply, that it is entitled to summary judgment because Kaller's testimony does not prove that Walton Construction — as opposed to Volkert or the City — accidentally damaged Kaller's property, fails to appreciate the applicable standard of review

---

[7] National Trust concedes that the Second Amended Complaint does, in fact, allege "property damage" and "bodily injury," as those terms are defined in the Policy. (Doc. 50 at 8 & n.2).

[8] The Second Amended Complaint, which was filed on May 6, 2009, alleges that Walton Construction's tortious conduct began "months ago." (Doc. 53-2 at 9, ¶ 39). The initial complaint, which was filed on February 1, 2008, made the same allegation. See Doc. 53-3 at 9, ¶ 27 ("The nuisance created by Defendants, months ago, still exists and is continuing in nature . . . .").

that the Court must apply. On summary judgment, National Trust bears the burden of proving that there is no dispute as to any material issue of fact. Celotex, 477 U.S. at 323. To defeat summary judgment, Walton Construction need not show that it was one of its trucks that accidentally caused the damage of which Kaller and his co-plaintiffs complain; rather, to prevail on its motion, National Trust must direct the Court to those portions of the record that show Walton Construction could not have caused any of the State Court Plaintiffs' injuries within the policy period. Ultimately, that may well be proved by the evidence introduced in the Underlying Action, but, at this point, on the record before the Court, the matter is genuinely disputed, and National Trust cannot be relieved of its duty to defend. Cf. Ladner, 347 So. 2d at 102 ("If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured.").

Finally, there is presently before the Court insufficient evidence to support a finding that Walton Construction, Volkert, or the City expected or intended to injure any of the State Court Plaintiffs. Armstrong and Moss are particularly instructive, whereas the CGL policies in those cases, like the Policy in this case, excluded from coverage bodily injury and property damage "expected or intended from the standpoint of the insured." (Doc. 1-1 at 5). In Armstrong, Alabama Supreme Court reiterated that, in order to "activate" an expected or intended injury exclusion, the insured must have acted with specific intent to do harm:

> There is a presumption in tort law that a person intends the natural and probable consequences of his intentional acts. However, this presumption has no application to the interpretation of the terms used in the "neither expected nor intended from the standpoint of the insured" coverage clause and the policy term "expected or intended injury" cannot be equated with foreseeable injury. This Court has recently made it clear that the legal standard to determine whether the injury was either expected or intended within this context is a purely subjective standard. The insured must have possessed specific intent to inflict the damage to

13

activate this policy exclusion.

Armstrong, 479 So. 2d at 1167 (internal citations omitted). Whereas the question of whether an insured subjectively intended to injure another person is a "question of fact for the jury or judge," Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer, 454 So. 2d 921, 924 (Ala. 1984), and whereas Hall stated no fewer than three times in his affidavit that Walton Construction did not intend to cause any harm or damage to the businesses on Florida Street (Doc. 53-4 at 3-4), the Court cannot find that the expected or intended injury exclusion eliminates coverage under the Policy.

### V.    Conclusion

In accordance with the foregoing, it is **ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 49) is **DENIED**.

**DONE** and **ORDERED** this the **6th** day of **February 2012.**


/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**